# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **GIDDY HOLDINGS, INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL NO. 1:22-CV-00904-LY** |
| **IDEAS, INC. f/k/a  INTEGRATED** | § | |
| **DESIGN ENGINEERING AND** | § | |
| **ANALYSIS SERVICES, INC.,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    THE HONORABLE LEE YEAKEL**
**        UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer, filed October 31, 2022 (Dkt. 15); Plaintiff's Brief in Opposition to Defendant's Motion to Transfer Venue, filed November 14, 2022 (Dkt. 16); and Defendant's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer, filed November 21, 2022 (Dkt. 17). The District Court referred the motion to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Dkt. 18.

## I.    Background

Plaintiff Giddy Holdings, Inc. develops and sells medical devices used to treat erectile dysfunction. Dkt. 1-1 (Plaintiff's Original Petition) ¶¶ 2, 6. Defendant IDEAS, Inc., formerly known as Integrated Design Engineering and Analysis Services, Inc., designs and sells plastics. Dkt. 1-1 ¶ 3.

Giddy hired IDEAS in June 2019 to make one of its erectile dysfunction devices ("Giddy Device"). IDEAS designed and made a series of molds ("Molds") to create the Giddy Device, which would be sold in packs called "Giddy Packs." *Id.* ¶ 7. IDEAS then hired a subcontractor in China to manufacture the Molds. Dkt. 1-1 ¶ 8. The Molds "are complicated pieces of the manufacturing process, and are comprised of approximately 20 steel plates and 400 total components," each weighing about a thousand pounds. *Id.* ¶ 9. Giddy alleges that it is "the lawful owner of all right, title, and interest in and to the molds." *Id.* ¶ 10.

After a few months, a dispute arose between the parties "regarding the production of the Giddy Packs and the required payment from Giddy." *Id.* ¶ 11. IDEAS contends that it stopped shipping the Giddy Packs because Giddy failed to complete all payments under the parties' contract. The parties then entered into an "Inventory Purchase and Settlement Agreement" in which Giddy agreed to purchase 154,272 Giddy Packs from IDEAS for $468,868.77. Dkt. 15-1 at 6. The Agreement provides, in relevant part:

> **8.9. Applicable Law.** All disputes arising under this Agreement shall be governed by and interpreted in accordance with the laws of Ohio, without regard to principles of conflict of laws. The Parties to this Agreement will submit all disputes arising under this Agreement to court in Stark County, Ohio. No Party to this Agreement will challenge the jurisdiction or venue provisions as provided in this section.

* * *

> **8.12. Molds.** The Parties Acknowledge that the molds in the possession of Contract Manufacture's factory in China, which consists of a 4 cavity family mold for the Giddy erectile dysfunction devise with one cavity of each of 4 sizes, is the property of Giddy, so long as Giddy's account is in good standing with all invoices paid in full, and Contract Manufacturer has no rights and/or claims to the aforementioned molds. Contract Manufacturer claims an artisan lien on the molds until all of Giddy's account with Contract Manufacturer is paid in full and current.

*Id.* at 10-11.

IDEAS contends that Giddy breached the Agreement within weeks by failing to fully fund its purchase orders. Dkt. 15 at 3. IDEAS sued in Ohio state court, alleging that Giddy breached the Agreement. *Id.* Giddy removed the action to the Northern District of Ohio and counterclaimed for breach of contract and conversion. *Integrated Design Eng'g & Analysis Servs., Inc. v. Giddy Holdings, Inc.*, No. 5:20-cv-00563-JG (N.D. Ohio Mar. 13, 2020), Dkt. 15.[1] The parties filed cross-motions for summary judgment.

The District Court for the Northern District of Ohio granted summary judgment in part. *Id.* at Dkt. 70. The court held that (1) Giddy breached the Agreement without legal excuse, (2) IDEAS did not breach the Agreement, and (3) IDEAS was not liable for conversion because it had a valid lien on the Molds. *Id.* A trial was held to determine the remaining damages, and the jury awarded IDEAS $85,600. *Id.* at Dkt. 109. The district court entered final judgment awarding IDEAS $125,600 in damages on April 14, 2021. *Id.* at Dkt. 111. Giddy appealed to the Sixth Circuit, which affirmed on March 24, 2022. *Id.* at Dkt. 112.

On July 11, 2022, Giddy filed this lawsuit in Texas state court, asserting claims for replevin and detinue, as well as conversion. *Giddy Holdings, Inc. v. IDEAS, Inc.*, No. D-1-GN-22-003136 (419th Dist. Ct., Travis Cnty. Tex., July 11, 2022), Dkt. 1-1. Giddy alleges that "Defendant has and continues to unlawfully exercise dominion and control over the molds by failing to return them to Giddy after the expiration of Defendant's lien over the molds, to the unlawful exclusion of Giddy's rights as the owner of the molds." *Id.* ¶ 26.

IDEAS removed to this Court on September 8, 2022 and filed an Answer and Counterclaim on September 15, 2022. Dkt. 1, 7. IDEAS asserts affirmative defenses of res judicata, lack of personal jurisdiction, improper venue, and material breach by Giddy, and a counterclaim under Ohio

---

[1] The Court may take judicial notice of the case docket as a matter of public record. *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019).

Revised Code 2323.51(B)(1) that Giddy engaged in "frivolous conduct" by filing this suit because it already litigated these claims in Ohio.

IDEAS now moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, IDEAS argues that the case should be (1) dismissed for *forum non conveniens* because a forum selection clause in the Agreement requires the case to be litigated in Ohio state court, or (2) transferred to the Northern District of Ohio under 28 U.S.C. § 1404(a).

## II.   Legal Standards

A court must resolve threshold jurisdictional issues before determining the merits of a case. *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 231-32 (5th Cir. 2012). "Personal jurisdiction, like subject matter jurisdiction, is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Id.* at 231 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)) (cleaned up).

Under Rule 12(b)(2), a court must dismiss a claim if it lacks personal jurisdiction over the defendant. The plaintiff has the burden to establish specific jurisdiction for each claim asserted. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022); *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Id.*

> The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion. Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for personal jurisdiction has been presented.

*Sangha v. Navig8 ShipManagement Priv. Ltd.,* 882 F.3d 96, 101 (5th Cir. 2018) (cleaned up).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Sangha*, 882 F.3d at 101. Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Id.* For personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (citation omitted).

Here, the Court's analysis begins and ends with the determination that it lacks personal jurisdiction over Defendants.

### III.    Analysis

Giddy, a Delaware corporation with its principal place of business in Travis County, Texas, filed this suit in Travis County against IDEAS, an Ohio corporation with its principal place of business in North Canton, Ohio. While Giddy concedes that general jurisdiction does not exist, the parties dispute whether the Court may exercise specific personal jurisdiction over IDEAS.

Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Id.* The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

1. whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;

2. whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

The first factor requires Giddy to show that IDEAS had sufficient minimum contacts with the State of Texas. For there to be minimum contacts to confer specific jurisdiction,

> a defendant must have "purposefully availed himself of the benefits and protections of the forum state" "such that he should reasonably anticipate being haled into court there." That requirement is the "constitutional touchstone" of personal jurisdiction, and ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

*Id.* (footnotes omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), and

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

It is well-established that "merely contracting with a resident of the forum state is insufficient

to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs.,*

*Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773,

778 (5th Cir. 1986)). The Fifth Circuit has

> repeatedly held that the combination of mailing payments to the
> forum state, engaging in communications related to the execution and
> performance of the contract, and the existence of a contract between
> the nonresident defendant and a resident of the forum are insufficient
> to establish the minimum contacts necessary to support the exercise
> of specific personal jurisdiction over the nonresident defendant.

*Id.*

The parties' contract centered around IDEAS' operations outside Texas. It is undisputed that

IDEAS, an Ohio corporation, has no offices, bank accounts, or employees in Texas. Giddy admits

that it is the one that sought out the contractual relationship with IDEAS. *See* Dkt. 16 at 2; *see also*

Jacobson Aff. ¶¶ 7-8, Dkt. 16 at 22 (stating that another company referred IDEAS to Giddy).

IDEAS designed the Molds outside Texas, and the Molds were manufactured by a subcontractor

in China. Giddy argues that IDEAS "quickly began regular and continuous contact with Giddy in

Texas" and sent physical samples to its offices in Texas, Dkt. 16 at 7-8, but the communications

between the parties all relate to performance of the contract and connect IDEAS to Texas only by

the "mere fortuity" that Giddy is a Texas resident.[2] *See McFadin v. Gerber*, 587 F.3d 753, 760-61

(5th Cir. 2009) (holding that sustained contractual relationship between Texas resident plaintiff

---

[2] Giddy's CEO, Brett Jacobson, avers that "IDEAS, through and with Giddy, also collaborated on several
occasions with a Texas law firm to ensure that the [Giddy device] complied with necessary laws, as well as
several mold designers based in Texas to design the molds." Jacobson Aff. ¶¶ 11-12, Dkt. 16 at 22. But
there is no suggestion that these contacts were initiated by IDEAS such that IDEAS can be said to have
purposefully availed itself of the forum state.

and nonresident defendant did not establish minimum contacts where Texas was not the "hub" of the parties' activities); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that exchange of communications between Texas and Oklahoma could not constitute purposeful availment of Texas law where communications to Texas rested only on  the "mere fortuity" that plaintiff was a resident of the forum). The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a "mere fortuity." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).

Giddy also argues that when a nonresident defendant commits "an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts." Dkt. 16 at 7 (quoting *McFadin*, 587 F.3d at 761). The "effects theory" is inapplicable because "the wrongful exercise of dominion and control over another's property must occur in the forum state." *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 323 (5th Cir. 2020); *see also PervasiveSoftware*, 688 F.3d at 229 (holding that defendant was not subject to personal jurisdiction where tort of conversion did not occur "in whole or in part" in Texas). In its claims for replevin and detinue and conversion, Giddy asserts that IDEAS is unlawfully detaining its Molds. Because neither IDEAS nor the Molds have ever been located in Texas, the alleged unlawful detention did not occur in whole or in part in Texas. *See Pervasive Software*, 688 F.3d at 229. That Giddy, a Texas resident, was injured here "cannot add anything" to the minimum contact analysis. *Libersat*, 978 F.3d at 323.

The Court finds that Giddy has not shown that IDEAS has sufficient minimum contacts with Texas to confer personal jurisdiction. Given this finding, the Court need not consider the remaining specific jurisdiction factors. *Moncrief Oil*, 481 F.3d at 315.

## IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer (Dkt. 15).

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 20, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE